327 P.2d 994

Ott DIXON and Flora Ellen Dixon, husband and wife, Appellants,

v.

Ralph B. FEFFER, Sr., Ralph Feffer, Jr., and Robert E. Feffer, Co-partners, d.b.a. Ralph Feffer and Sons Supply Co., Appellees.

No. 6292.

Supreme Court of Arizona.

July 15, 1958.

Alex B. Baker and Cunningham, Carson & Messinger, Phoenix, by William H. Rehnquist, Phoenix, for appellants.

Pickrell, Hunter, Bartlett & Penn, and Ross F. Jones, Phoenix, for appellees.

UDALL, Chief Justice.

This is an appeal by defendants Ott Dixon and wife from a judgment in the *net* amount of $11,447.54, which was entered for plaintiff-appellee Ralph B. Feffer, Sr., et al., based upon a jury verdict on

plaintiffs' third amended complaint less the amount of the verdict on defendants' counterclaim.

█ The defendants were the owners of a large tract of farming land on the Hassayampa in western Maricopa County and were desirous of obtaining grain storage facilities, primarily to store their own grain crops at least part of which would be used in their cattle feeding operations. It was contemplated that if they had surplus storage space in any given year it might be used commercially for the storage of grains grown by other farmers in the area.

Plaintiffs were the local distributors and sellers of a prefabricated trussless steel building that required no braces or support. This building, a patented product manufactured by a Chicago concern, was called the "Wonder Building". In February 1954 the parties entered into a written agreement (obviously drawn by laymen) whereby defendants agreed to purchase from the plaintiffs such a building, the total erected cost of which was agreed upon as $18,684.-42. A down payment of 20% thereof was made by defendants to plaintiffs on February 11, 1954.

Wayne L. Manweiler and Rick H. Lambie, in November 1953, formed a partnership called "Arizona Trussless Steel Company" which was set up primarily to build the trussless Wonder Buildings and they are the ones who actually constructed the Dixon building. At the time the Dixon-Feffer contract was entered into the partners were acting as salesmen for Feffer & Sons, not on a salary but on a percentage or commisson basis. Defendant Dixon maintained throughout that his dealings were solely with Feffer and that at no time did he have any contractual relations with the partnership of Lambie and Manweiler. The latter were the ones who contacted Richard Cleveland, a concrete contractor who laid the concrete floor and footings.

By appropriate assignments of error defendants' first reliance is upon the legal proposition that a contractor cannot maintain an action for the recovery of compensation allegedly due him unless he was licensed at the time the contract was entered into. As an abstract proposition this is correct. There are, however, statutory exceptions to the rule.

It is admitted that on February 11, 1954—the date the contract in question was entered into—neither the plaintiffs, Feffer and Sons, nor their agents, Lambie and Manweiler, were licensed contractors. It was not until a month later (March 16, 1954) that contractor's licenses were issued to them. Unless the exemptions of law governing contracting, 67–2303, A.C.A.1939 (1952 Cum.Supp.) which was then in effect (now A.R.S. § 32–1121) are controlling here the plaintiffs were not entitled to

recover and the judgment of the lower court should be reversed. However, it is the contention of plaintiffs that the building in question was constructed incidental to farming and was therefore exempt under the contractors' law, supra. Reliance is had in part upon Shuey v. Shearman, 77 .Ariz. 207, 269 P.2d 607. In that case we held that one who drills a water well to furnish water for agricultural purposes need not be a licensed contractor. Admittedly this decision is not directly in point.

Defendant Dixon purchased high land contiguous to his farming operation for the sole purpose of constructing this granary and feeding pens for use incidental to his entire farming operation. This formed an integral part of such farm operations. The mere fact that in slack years he would utilize the space left vacant by his lack of crops by storing, commercially, grain for his neighbors does not make of this a commercial operation. The statute exempts construction and operation of buildings for use "incidental" to farming.

We hold, under the facts of this case, that the construction of the building came under this farming exemption and as such the contractor could maintain this action without first having pleaded and proved he was a licensed contractor at the time the contract was entered into. Cf. Fraenkel v. Bank of America, 40 Cal.2d 845, 256 P.2d 569; Fraenkel v. Trescony, 48 Cal.2d 378, 309 P.2d 819.

Plaintiffs' original complaint alleged two causes of action: (1) on an express contract for materials furnished, which included a prayer for a decree foreclosing a materialman's lien thereon and that the liens and claims of defendants other than Dixons be ascertained and adjudged, and (2) an account stated for those materials so furnished and a prayer for the fair and reasonable value in the same sum (i. e. $8,947.83) as was sought in the first cause of action.

Defendants by their answer set forth the defense of a contract for the construction of the building. They denied there was a contract for the furnishing of materials only but stated:

"* * * that under the terms and provisions of said agreement, said plaintiffs promised and agreed to completely construct, erect and complete said building and furnish and supply all materials, equipment, supplies, merchandise, labor and services necessary therefor for the contract price of $18,684.42."

Furthermore defendants' counterclaim alleged a breach of this contract in that the plaintiffs had failed to construct the building in a workmanlike manner and that it was unfit to be used for the storage of grain. There was considerable evi-

312

dence, both oral and documentary, admitted to prove this breach.

At the conclusion of a ten-day trial, plaintiffs moved to amend the complaint by adding thereto a third cause of action. Therein it was alleged the contract was for the construction of the building for the price of $18,684.42; that 20% or $3,736.88 had been paid thereon and there remained an unpaid balance of $14,947.54. 16 A.R.S. Rule 15, Rules of Civil Procedure was relied upon by plaintiffs; defendants urged the amendment was not covered by the rule and was contrary to the theory theretofore followed by plaintiffs, and the following colloquy occurred, viz.:

"The Court: I believe you have proved on your defense, proved there was a contract.

"Mr. Baker: There is no—that is true, no contention.

"The Court: I believe it would be error for me to deny an amendment to permit him to show by the pleadings that there was a contract since you did prove it.

"Mr. Baker: You notice he is increasing the amount, what he wants now is $18,000. You see, the amount less the $3,700 paid, instead of his cost of materials.

"The Court: Yes, less the $3,700.

"Mr. Baker: That is right.

"The Court: Yet you proved that that was the price, the $18,000.

"Mr. Baker: And the $3,700 has been paid.

"The Court: I am going to permit the amendment."

Later defendants moved to dismiss this third cause of action urging it conflicted with the other two causes of action. This motion was also denied.

Defendants urge the court below erred (a) in not requiring plaintiffs to elect upon which cause of action they would stand before going to the jury; (b) in not submitting each cause separately; (c) in instructing the jury to disregard the liens filed by defendants Manweiler, Lambie, and Drew; (d) in not instructing the jury as to the amount recoverable in the event a verdict for plaintiffs was returned (thereby allowing recovery for the entire contract price including the sums covered by the liens filed, supra); and (e) in allowing the amendment and failing later to dismiss same as it presented a new and different cause of action.

■ Rule 15 (b), Rules of Civil Procedure, governs amendments to conform to the evidence. The purpose thereof is to allow a case to be ultimately tried on its merits, so that parties litigant, in one trial, will receive all of the relief to which they are entitled. See, Leigh v. Swartz, 74 Ariz. 108, 245 P.2d 262. The

rule also provides for the granting of a continuance to allow the objecting party to meet the evidence. No continuance was requested in the instant case.

The purpose of joining other lien claimants either as plaintiffs or, as was done here, as defendants is to adjudicate all lien claims of a common origin against the same property in one proceeding. See, Lucky Boy Min. & Mill. Co. v. Moore, 23 Ariz. 291, 203 P. 556.

With these legal principles before us let us analyse defendants objection to the action taken below as presented in the aforementioned assignments of errors.

Defendants urge plaintiffs made no attempt at the trial to prove performance of the contract as they were only claiming for the value of the materials furnished. Defendants' proof of breach of contract was directed towards the failure to complete the building in a satisfactory manner. The jury found the building was unsatisfactory and incomplete and on the counterclaim returned a verdict of $3,500 for defendants and against plaintiffs as damages for such defects. It was properly within the province of the jury to determine all of such issues under the allegations of all the pleadings and we fail to see how defendants were prejudiced by the amendment which merely conformed plaintiffs' pleadings to the evidence.

Under the doctrine enunciated in Julian v. Carpenter, 65 Ariz. 157, 176 P.2d 693, plaintiffs were not required to elect upon which cause of action they would stand before the case was submitted to the jury. Hence the lower court did not err in not requiring this election nor did it err in its submitting the case to the jury without separating the causes of action. The verdicts returned show that the failure to submit the causes of action separately did not confuse the jury. The verdict for plaintiffs was necessarily returned on the amended third cause of action. By instructing the jury to disregard the liens of the other defendants, the court necessarily found them to be invalid as against Dixons but to be merged in the claim of the contractors—the plaintiffs. A.R.S. § 33–995 provides protection for the owner against actions brought on liens filed by persons other than the contractor. By their amended complaint, plaintiffs have admitted responsibility for the entire construction of the building and cannot in the future refuse to settle the claims of the other lien-defendants or other parties who may legally claim money for work done pursuant to the contract.

We hold the allowance of the amendment was proper and the submission of the case to the jury under the instructions given was a proper method of disposing of the claims of the parties to this litigation.

314

Plaintiffs in their brief admit that a $500 blower, contracted for was not furnished by them. Defendants urge this sum must be deducted from the amount awarded on the contract price. We agree. There being no dispute as to this sum, under the provisions of A.R.S. § 12–2103 the trial court is directed to reduce the judgment entered by this amount.

Pursuant to A.R.S. § 12–342, subd. A, defendants are allowed their costs in this court.

Judgment as modified, affirmed.

WINDES, PHELPS, STRUCKMEY-ER and JOHNSON, JJ., concur.